[See Case No. 91.]

---

## Case No. 6,177.

### HARVEY v. ALLEN et al.

[16 Blatchf. 29; [1] 2 Browne, Nat. Bank Cas. 439; 25 Int. Rev. Rec. 95.]

Circuit Court, S. D. New York.     Feb. 19, 1879.

ATTACHMENT—NATIONAL BANKS—STATE COURTS— RECEIVERS—PARTIES—COSTS.

1. After a circulating note of a national bank, which it had failed to redeem in lawful money, had been protested, under section 46 of the act of June 3, 1864 (13 Stat. 113), an attachment from a state court was levied on moneys of said bank on deposit in another national bank, to secure a debt from it to A. Subsequently, a receiver of the bank was appointed, under section 50 of said act. *Held*, that, under section 52 of said act, said levy was void.

[Cited in Roberts v. Hill, 24 Fed. 572.]

2. The receiver, having applied to the state court to dissolve such attachment, without becoming a party to the suit in the state court, and such motion being denied, and he having then immediately brought this suit against A., and the bank in which the moneys were on deposit, and the sheriff who levied the attachment, to assert his title to such moneys. *Held*, that he was entitled to such relief.

3. A. having, after process in this suit was served on the defendants, obtained a judgment in his suit in the state court, and collected it by execution against the moneys so attached, this court decreed that A. should pay directly to the plaintiff the money he had so collected, and the bank in which the moneys had been on deposit should pay such money if, and only if, it could not be collected from A.; that such bank should pay costs to the plaintiff; that such bank should not have costs against A.; that A. should pay costs to the plaintiff; that the sheriff should not have costs against the plaintiff; that the plaintiff should recover from A. the costs of making the sheriff a party, and the costs of the sheriff's defence, the latter costs to be paid over to the sheriff by the plaintiff, when collected; and that the bank in which the moneys had been on deposit should respond to the plaintiff for them, with interest from the time when process in this suit was served on it, subject to the said decree as to payment by A. of what he had received of such moneys.

[This was a bill in equity by Joel D. Harvey, receiver of the Scandinavian National Bank of Chicago, against Benjamin F. Allen and others.]

George Bliss, for plaintiff.

Michael H. Cardozo, for Allen, Stephens & Co.

Aaron J. Vanderpoel and J. Sterling Smith, for the Broadway Bank and the sheriff.

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

BLATCHFORD, Circuit Judge. The Scandinavian National Bank of Chicago was a bank organized under the national banking act, and subject to its provisions. It was located at Chicago, Illinois. On the 10th of December, 1872, it failed to redeem a circulating note of the denomination of $5, issued by it, when payment thereof was legally demanded at its office in Chicago, during the usual hours of business. On the same day a notary public duly protested said note for non-payment, and served a written notice of the protest on the president of the bank, and it stopped doing business, and a United States bank examiner took possession of all of its books and assets. Section 46 of the act of June 3, 1864 (13 Stat. 113), provides that, if any national bank shall fail to redeem in lawful money any of its circulating notes, when payment thereof shall be lawfully demanded, during the usual hours of business, at its office, they may be protested by a notary public. The notary is required to give notice of the protest to the president or cashier of the bank, and to forward notice of the protest to the comptroller of the currency. Section 50 authorizes the comptroller, on becoming satisfied, as above specified, that any bank has so refused to pay its circulating notes and is in default, to forthwith appoint a receiver, who, under the direction of the comptroller, shall take possession of the books, records and assets of the bank, and collect its debts. Provision is made for the receiver to turn the assets into money and pay such money to the treasurer of the United States, and for the comptroller to distribute such money pro rata among the creditors of the bank. Section 52 is in these words: "All transfer of the notes, bonds, bills of exchange and other evidences of debt owing to any association, or of deposits to its credit, all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor, all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void." On the 18th of December, 1872, the comptroller, by an instrument in writing reciting the necessary preliminary facts, appointed the plaintiff in this suit to be receiver of said bank, with all the powers, duties and responsibilities given to or imposed upon a receiver under the provisions of said act. At the time the Scandinavian Bank failed, the National Broadway Bank, another national bank, located in the city of New York, and one of the defendants in this suit, had on deposit moneys belonging to the Scandinavian Bank, subject to its draft.

On the 9th of December, 1872, the defendants Allen, Stephens and Blennerhassett, composing the firm of Allen, Stephens & Co., held a sight draft drawn by the Scandinavian Bank on the Broadway Bank, for $650. On that day they presented the same for payment to the latter bank, but it was not paid, and thereupon it was duly protested and notice given to the former bank. On the 12th of December, a warrant of attachment was issued out of the supreme court of New York, on the application of Allen, Stephens & Co., in an action in said court by them against the Scandinavian Bank, to recover $650, with interest from December 9th, and on the ground that said bank was a foreign corporation organized under said act of 1864, commanding the sheriff of the city and county of New York to attach and safely keep all the property of said bank within his county, or so much thereof as might be sufficient to satisfy the said demand, together with costs and expenses. On the 13th of December, this attachment was levied by the defendant Brennan, as such sheriff, on the moneys of the Scandinavian Bank in the possession of the Broadway Bank. A summons was issued in said action, dated December 12th, demanding judgment for $650, with interest from December 9th, and costs. A complaint, setting forth the cause of action, was verified December 18th. On the 19th of December, in accordance with the state practice, an order was made by the state court, that the summons be served by publication in two newspapers, and that a copy of the summons and complaint be deposited in the post-office, directed to the Scandinavian Bank, as defendant. On the same day the summons and complaint were filed in the state court. On the 8th of February, 1873, the attorney of the United States for this district caused an affidavit to be made by Mr. Tremain, entitled in the suit in the state court, reciting the proceedings therein, and setting forth that the Scandinavian Bank had suspended and become insolvent December 9th, 1872; that Mr. Harvey had been appointed its receiver, by the comptroller, under said act; that he, said attorney, had "been instructed to act for said receiver in and about the matters and proceedings appertaining to the claim of" Allen, Stephens & Co.; and that, upon the facts so stated, and all the proceedings in said suit, and, upon the ground, among others, that the state court had no jurisdiction, and that the continuance of the proceedings in said action, and of said attachment, was in violation of said act of congress, and that said attachment was issued after the commission of an act of insolvency by the Scandinavian Bank, and with a view to prevent the application of its assets, as prescribed in said act, and to prefer Allen, Stephens & Co., by securing to them their claim in full from such assets in preference to other creditors, or the ratable proportion of said assets that might be found

due to them under said act, the said attorney desired to move, in behalf of the defendant, to vacate said order of publication and warrant of attachment, and to stay the proceedings in said action. On said affidavits, and on an affidavit by said attorney, that one of the circulating notes of the bank was protested on December 10th, for non-payment and non-redemption, and that such fact was duly certified to the comptroller of the currency, a motion to the above effect was made before the state court, on the part of the defendant, by counsel who appeared for it for the purpose of the motion. The court, on the 5th of March, 1873, denied the motion, at special term, holding, that, so far as the defendant was concerned, the attachment was properly granted, and that, in accordance with the decision of the court of appeals of New York, in Tracy v. First National Bank, 37 N. Y. 523, it must be held, that the receiver had no status in the action to make a motion to vacate the attachment, but must assert his title in some other manner. The point of the decision in the Tracy Case was, that the receiver, not being a party to the suit, could not make any motion in it. The Scandinavian Bank, then, by the said attorney, who appeared for it for that purpose, took an appeal to the general term of the state court, from the order denying such motion. On the 16th of May, 1873, the general term affirmed the order appealed from. The receiver did not make himself a party to the suit in the state court, but, in May, 1873, he filed the bill in this suit. An amended bill was filed in June, 1873. It sets forth the substance of the matters above stated. It alleges, that, when the Scandinavian Bank became insolvent, the Broadway Bank had in its possession "certain assets" of the former bank, "and, among the same, the sum of about fifteen hundred dollars, more or less, in currency, or otherwise," which the plaintiff, as receiver, and in behalf of himself and said comptroller, was entitled to demand and receive from the latter bank, and that the same has been demanded, but the latter bank has refused to deliver the same to the plaintiff or to said comptroller. or to make any disposition of the same that will enable the plaintiff to pay the same into the treasury of the United States. It alleges that the claim made under said attachment is contrary to law. It prays that an injunction may be issued, restraining the Broadway Bank from paying over said moneys to any one but the plaintiff; that Allen, Stephens & Co. and said sheriff be enjoined from proceeding on said attachment, or entering any judgment or order in said suit, or on their said claim, save in the way of presenting the same to the plaintiff as receiver, as claims entitled to no preference over those of the general creditors of the Scandinavian Bank; that the Broadway Bank pay to the plaintiff, to be by him paid into the treasury of the United States, the said sum of

$1,500, "be the same more or less," with interest; and that a receiver of said moneys, during the pendency of this suit, be appointed.

Allen, Stephens & Co. answered, in October, 1873, setting up their claim, and said attachment and the proceedings in said suit in the state court. Their answer also set forth, that, on the 13th of September, 1873 a judgment was recovered in said suit, against the Scandinavian Bank, for $829.84; that, on the same day, an execution was issued on said judgment, to said sheriff; that said sheriff collected on said execution, and under said attachment, from said Broadway Bank, and paid to Allen, Stephens & Co., on the 20th of September, 1873, $820, in full satisfaction of said judgment and of all claim of theirs under said attachment; and that Allen, Stephens & Co. claim no interest in any indebtedness of the Broadway Bank to the Scandinavian Bank or in any of the assets of the latter bank.

The sheriff answered, in October, 1873, setting up the proceedings in the suit in the state court and the attachment and its levy and the judgment and execution, and the collection of the money and of fees and expenses from the attached property.

The Broadway Bank answered, in October, 1873, setting up the attachment and the proceedings in the suit in the state court, and the judgment and execution, and the taking by the sheriff from the attached moneys in the hands of the Broadway Bank, of sufficient to satisfy the execution; that said bank has in its possession $568.51 of said deposits of the Scandinavian Bank, and no more, subject to the order of the bank, or its legal representatives or assigns; and that said bank has not refused to pay any of said deposits to the plaintiff, except such as were so attached by the sheriff, amounting to $876.94.

On the 9th of January, 1873, the plaintiff directed the Broadway Bank to credit itself in account with $153.20, for a collection made by the Scandinavian Bank. On the 17th of January, 1873, the plaintiff wrote to the Broadway Bank as follows: "Your favor of 14th inst., enclosing acc't current, received. I have had it compared with the books of this bank and find it correct. You will please send me your check for balance, less amount of the two attachments and sufficient to cover costs, say about $100 in each case. The U. S. Dist. Atty. in New York has been instructed from Washington to defend these suits, and, until decided, of course you will retain sufficient to indemnify you." On the 18th of January, 1873, the comptroller of the currency wrote to the Broadway Bank as follows: "I am informed that you have on deposit, to the credit of the Scandinavian National Bank of Chicago, $2,669.35 in gold, and $2,461.14 in currency, and that suits of attachment have been brought against the bank—one for $650 and the other for $441.95.

This bank having been placed in the hands of a receiver, you will, on the receipt of this letter, forward the balance due the Scandinavian National Bank, less the amount which has been attached, to this office, which amount will be deposited with the treasurer, in trust, subject to my order, for the benefit of its creditors, as provided by the national currency act." On the 21st of January, 1873, the comptroller wrote to the Broadway Bank as follows: "I have received your letter of the 20th, enclosing your certificate of deposit for $2,664.35 gold, being balance of coin account of the Scandinavian National Bank; also your certificate of deposit for $1,015.69, being balance of currency account, less the sum of $1,445.45, retained to abide the result of two attachments and probable costs thereon. Please inform me of the amount of those attachments and the amount retained for costs." The $1,445.45 was the balance of account made up with interest to December 9th, 1872, but not later. The amount paid to the sheriff by the Broadway Bank, September 20th, 1873, was $876.94. The second attachment referred to in the correspondence was one by McKim, Brothers & Co. The record does not show how it was disposed of, but it is not set up by any of the defendants. McKim, Brothers & Co. were originally made parties defendant to this suit, but the suit was discontinued as to them. The Broadway Bank and the sheriff appeared in this suit on the 5th of July, 1873, and Allen, Stephens & Co. appeared on the 7th of July, 1873. A motion was made, on notice to all the defendants, for an injunction to restrain the Broadway Bank from paying over to any person but the plaintiff the moneys mentioned in the bill, and for the appointment of a receiver to hold said moneys until the final determination of this suit, and for an injunction to restrain all the defendants from interfering with such disposition of said moneys pending the determination of this suit, but such motion was denied by this court by an order filed September 18th, 1873.

The case has now been brought to final hearing on pleadings and proofs. It is contended for the Broadway Bank, that the proceedings in the suit in the state court are binding on the plaintiff, and are a bar to the relief asked by the bill in this suit; that the state court had jurisdiction of the suit brought in it, and properly issued the attachment; that the bringing of this suit did not divest the state court of the jurisdiction it so acquired; that that court had authority to proceed in such action, and render and enforce judgment therein, so long as no defence was interposed, and so long as the insolvency of the Scandinavian Bank was not brought to the knowledge of that court in any manner of which it could take cognizance; that the plaintiff, on motion to the state court, could have been substituted as defendant in such action, and could then

have moved to vacate the attachment, or could have defended the action; that, as the plaintiff did not intervene in that action, but allowed it to proceed to judgment, and allowed the judgment to be enforced against the attached property, he cannot maintain this suit and obtain relief which could have been obtained by him in that action, especially when the effect of such relief will be to nullify the judgment in that action and the proceedings under it; that the sheriff was required by the state law to execute the attachment and the execution; and that the Broadway Bank could not resist the processes.

The argument on behalf of Allen, Stephens & Co. is addressed principally to a questioning of the correctness of the decision of this court in Cadle v. Tracy [Case No. 2,279], to the effect, that a state court has no jurisdiction of a suit against a national bank, where the bank is not located in such state, such jurisdiction being forbidden by section 57 of the act of June 3, 1864 (13 Stat. 116, 117). It is also contended for them, that, if the state court had jurisdiction to render the judgment which it did render, this court cannot, in this suit, re-examine the matters settled by that judgment.

The decision of the supreme court of the United States in National Bank v. Colby, 21 Wall. [88 U. S.] 609, disposes of the main question in this case. In the Colby Case, the First National Bank of Selma refused payment, on the 15th of April, of a treasury draft of the United States. The bank did not open for business on the 16th, and on that day the military authorities of the United States, under instructions from the secretary of the treasury, took possession of the property of the bank. On the 17th its president absconded. On that day Colby sued out an attachment, in a state court of Alabama, against the bank, on a contract debt, which was levied on its property. An examination into the affairs of the bank, on that day, showed a deficiency in its cash account, of $200,000, and, on the 30th of April a receiver of the bank was appointed by the comptroller of the currency. On the 22d of May, Colby filed a declaration in the suit. On the 1st of June, the bank was dissolved by a decree of the district court of the United States. In March, 1869, the suit in the state court was tried. The receiver did not make himself a party on the record to that suit, but he appeared by counsel, on the trial, and was allowed, without objection, to make proof of said facts, and to produce his appointment as receiver and the decree of dissolution. He thereupon moved the state court to dissolve the attachment and discharge the levy and that the suit abate. The motion was overruled. The receiver then, without objection, offered the same evidence to the jury, and requested the court to instruct them, that, if they believed the evidence, the suit could not be maintained, and

they must find for the defendant. The instruction was refused, and there was a verdict for the plaintiff and a judgment for $5,-632.33 and costs. The case was then taken by appeal to the supreme court of Alabama, and it (46 Ala. 435) affirmed the judgment. It is stated in the opinion of that court, that "the record does not show that the defendant, said bank, pleaded any plea in defence of said action." A part of the judgment which was affirmed authorized the issue of a venditioni exponas, to sell the property levied on under the attachment. The supreme court of Alabama held that the insolvency of the bank did not dissolve its liability to be sued by attachment. The case was then taken by a writ of error to the supreme court of the United States, and is the case so reported in 21 Wall. [88 U. S.] 609 [supra]. That court reversed the judgment and remanded the cause to the state court, with directions to discharge the attachment levied on the property of the bank. The supreme court held that the suit in the state court abated by the decree dissolving the bank. But it further held, that the property of a national bank, attached at the suit of an individual creditor, after the bank has become insolvent, cannot be subjected to sale for the payment of his demand, against the claim for the property, of the receiver of the bank, subsequently appointed. In the opinion of the court, comment is made on sections 50 and 52 of the act of June 3, 1864, and it is said, that they manifest a clear design, on the part of congress, to secure the assets of the insolvent bank for ratable distribution among its general creditors, and that no preference in the application of its assets can be obtained by adversary proceedings, so as to defeat such design. It is further said, that all objection to the right of the receiver to appear in the state court and move for the discharge of the attachment and the abatement of the suit, or to contest the case at the trial, was waived, because such right was not objected to at the time. The court add: "But, independently of this consideration, we are of opinion, that it was a proper proceeding on the part of the receiver to apply to the court below to discharge the attachment, on proof of the facts presented by him and the production of his appointment and the decree dissolving the injunction. Invested with the rights of the bank to the possession of the property, by his appointment, it was his duty to take the necessary steps to remove the levy. That levy was void as against his claim to the property; and, in our judgment, it was error for the court to refuse to discharge it on his application."

In the present case, the receiver applied to the state court to vacate the attachment, and his application was refused, on the ground that he had no status in the action, to make such an application. He was told that he must assert his title in some other manner.

Two ways were open. One was to be made a party defendant to the suit, in place of the bank. The other was to bring this suit. He brought this suit promptly, the bill being filed five days after the order of the general term was made, affirming the order denying the motion to vacate the attachment. In the Colby Case, the receiver was treated by the state court and by the supreme court of the United States as if he were a party to the suit, and his rights as against those of the attaching creditor were adjudicated directly in the suit brought by the attaching creditor. In the present case, the receiver, before anything of substance had been done in the suit in the state court, towards a judgment, except to issue and serve the attachment and publish the summons, filed the bill in this suit, making all parties interested defendants, setting up all the facts, and praying proper relief. The bill seeks a determination of the conflicting claims. It presents a case of equitable cognizance. On the facts set forth, the plaintiff was entitled, on final decree, to the relief prayed, except in respect of the injunctions asked for. It must be assumed, that the application for a preliminary injunction and for a receiver was refused because it was not shown that the fund was in peril, as respected the Broadway Bank, and because the court felt itself restrained by positive statute from enjoining the proceedings of Allen, Stephens & Co. in the state court. The answers do not set up that there is a plain, adequate and complete remedy at law. The plaintiff was not a party to the suit in the state court. The answers do not set up the pendency of the suit in the state court in bar of this suit. The rights of the plaintiff must be adjudicated as they stood when this suit was brought. The defendants, when served with process in this suit, were notified of the plaintiff's claim. Such process was served on Allen, Stephens & Co. and the Broadway Bank on the 22d of May, 1873. The original bill contained, in substance, the allegations found in the amended bill, except that it did not contain a prayer for an injunction against the Broadway Bank, nor any prayer for the appointment of a receiver. The amended bill prays "that the. conflicting claim to said moneys, set up by the several defendants herein, may be forever foreclosed and determined by the decree herein, and that complainant may be adjudged entitled to said moneys, to the use of his said office." That prayer in that form is not found in the original bill. The original bill made McKim, Brothers & Co. parties, with proper averments as to their attachment, but the amended bill drops them as parties and omits such averments.

The plaintiff did not, in any manner, submit himself to the jurisdiction of the state court, in such wise as to be bound by the judgment in the attachment suit, nor did he submit his rights to the adjudication of that court. When he applied to that court to vacate the attachment he was told that he had no standing to so apply, and that' he must make himself a party to the suit, and submit his rights to adjudication therein, before he could be heard therein. He then came into this forum, before anything more was done in the suit in the state court, and brought into this court all the parties to the controversy. He took the proper step to establish his trust as respected the fund in the hands of the Broadway Bank, by coming into this court of equity. The principle of the case of Eyster v. Gaff, 91 U. S. 521, has no application to a case like the present. The attachment levy being void as against the receiver's claim to the fund, and the state court having erroneously refused, on his application, to vacate the attachment, and having refused to adopt views such as are asserted in National Bank v. Colby [21 Wall. (88 U. S.) 609], the receiver was under no obligation to become a party to the suit in the state court, even though he might ultimately have the adverse judgment of the highest state court reversed by the supreme court of the United States, as was done in National Bank v. Colby. The moment he came into this court with the other parties to the controversy, there could no longer be any pretence that anything afterwards done in the suit in the state court could affect his rights. From that time the defendants went on at their peril, in disposing of the fund in the Broadway Bank, and the plaintiff is entitled to an adjudication of his rights here, as of the time he brought the defendants into this court, even though there was no preliminary injunction granted nor any receiver appointed.

It is contended, for the Broadway Bank, that, if it be held that the plaintiff is entitled to the relief he asks for in this suit, the court should proceed and adjust the equities between that bank and Allen, Stephens & Co., and that such adjustment should be an adjustment of all matters contained in the pleadings and the testimony, without regard to whether such matters occurred before or after the commencement of this suit; that the proceedings which were subsequent to the commencement of this suit are set forth in the three answers, and there is no dispute about those facts; that the defendants cannot object to an adjudication being had upon facts which they themselves plead; that, at the commencement of this suit, the Broadway Bank was a mere stakeholder; that the payment to the sheriff was made under the pressure of legal process, and cannot be deemed a voluntary payment; that, if the court should decide in favor of the plaintiff, it should decree that Allen, Stephens & Co. pay to the plaintiff the amount which the Broadway Bank paid to the sheriff, and that the Broadway Bank pay to the plaintiff $568.51, or, if a decree be given against the Broadway Bank for the full amount in its hands at the commencement of this suit,

there should also be a decree in favor of said bank against Allen, Stephens & Co. for the $876.94; and that the satisfaction of the judgment of Allen, Stephens & Co. against the Scandinavian Bank should be cancelled, and the plaintiff, as receiver, be ordered to pay the proper dividend on such judgment to Allen, Stephens & Co. or to the Broadway Bank, whichever may appear, according to the other provisions of the decree to be entitled to such dividend.

On behalf of Allen, Stephens & Co. it is contended, that no decree can be made in this suit compelling Allen, Stephens & Co. to refund any part of the money which was paid to them under the judgment; that the identical money attached did not belong to the Scandinavian Bank; that the co-defendants of Allen, Stephens & Co. do not, in their answers, make any claim for affirmative relief against Allen, Stephens & Co.; that, if the Broadway Bank was merely a stakeholder, it could have gone into a court of equity, have filed a bill of interpleader, have paid the money into court, and thus have relieved itself from all liability in the matter; that, having failed to do so, it cannot now, as against Allen, Stephens & Co., and to their prejudice, claim any relief; and that the payment to the sheriff by the Broadway Bank was a voluntary payment, made without protest or objection, and, at most, under a mistake of law and not of fact.

The bill in this case sets forth a case of equitable cognizance arising out of trust. It alleges that the comptroller of the currency, on the insolvency of the Scandinavian Bank, and the seizure of its assets, and the protest of its circulating note, became vested in trust with such assets, for the creditors and others interested under the provisions of the act of congress, and as an officer of the United States, and has continued so vested and has exercised charge and trust over and in all such assets and property, and lawfully has been entitled to the actual custody and possession of the same, and, through the plaintiff, to demand and collect the same under the provisions of the act of congress. It sets out, that, at the time the Scandinavian Bank became insolvent, the Broadway Bank had in its possession certain assets of the former bank, namely, said moneys, which the plaintiff, as receiver, and in behalf of himself and said comptroller was entitled to demand, and receive manual custody of, from the Broadway Bank, but the latter bank refuses to deliver the same to the plaintiff or to the comptroller, or to make any disposition of the same that will enable the plaintiff to pay the same into the treasury of the United States, which his duty in the premises, and a proper performance of the trusts aforesaid, requires to be done. It then sets forth, that Allen, Stephens & Co. claim a part of said funds, under their attachment. It prays that the moneys, assets of the Scandinavian Bank, in the hands of the Broadway Bank, be paid to the plaintiff, in aid of and to enforce the discharge of said trust, in behalf of himself and the said comptroller. The attachment issued was an attachment against the property of the Scandinavian Bank. It is set up as such in the answer of Allen, Stephens & Co. Although, as between the Broadway Bank and the Scandinavian Bank, the former was a debtor to the latter for the moneys on deposit, yet, before the attachment of Allen, Stephens & Co. was levied, a trust had, under the act of congress, become impressed upon the moneys on deposit in the Broadway Bank, and such trust remained impressed upon them at all times afterwards, and followed such of them as were paid by that bank to Allen, Stephens & Co. Allen, Stephens & Co. did not take them as bona fide purchasers without notice, but took them with full knowledge of all the facts and of this suit. The forms of proceeding in a court of equity are flexible, to suit the different postures of cases. It may model the remedy, so as to suit it to controlling equities and the real and substantial rights of all the parties. It can adapt its decree to all the varieties of circumstances which may arise, and adjust it to all the peculiar rights of all the parties in interest. 1 Story, Eq. Jur. § 28. In adapting its decree to the special circumstances of a case, a court of equity will adjust all cross equities, when all the parties in interest are before the court, so as to prevent multiplicity of suits. Id. § 437. Allen, Stephens & Co. having taken the $876.94 from the Broadway Bank, pending this suit, wrongfully, as against such bank and the plaintiff, without any title to it, and under a levy which was void as against the plaintiff's claim to the money, must be compelled to restore the money to the condition in which it was when this suit was brought, so that the Broadway Bank may respond for it to the plaintiff. It does not lie with Allen, Stephens & Co. to claim any advantage from their unlawful exaction from the Broadway Bank, or to complain that said bank paid the money to them and did not file a bill of interpleader and bring such money thereon into court. All parties had been brought into this court by this suit, and their rights placed sub judice, and Allen, Stephens & Co. cannot be heard to say that the Broadway Bank should have brought another suit. It is, therefore, proper that there should be a decree that Allen, Stephens & Co. respond to the plaintiff directly, in the first instance, for the money they received, and that the Broadway Bank should not be called upon to pay such money until there has been a failure to collect it on execution from Allen, Stephens & Co. The Broadway Bank might have brought the whole money into this court, in this suit, before paying any part of it to Allen, Stephens & Co., and, therefore, as respects the plaintiff, who did not assent to the disposition made of the money paid to Allen, Stephens & Co., the Broadway Bank should

respond to him for the money it paid to Allen, Stephens & Co., if such money cannot be collected, on execution, from Allen, Stephens & Co.

The Broadway Bank claims that it should not be charged with costs, on the ground that what money it did not pay over it retained with the assent of the plaintiff or of the comptroller, and that the plaintiff made no demand for the money which the McKim attachment covered. Whatever assent was given before this suit was brought, to the retaining by the Broadway Bank of enough money to cover the two attachments, the bringing of this suit was a withdrawal of such assent, and was a sufficient demand for all the money. As against the plaintiff, the Broadway Bank might have brought the money into this court, in this suit, or, knowing, as it did, of the plaintiff's claim and of the conflicting claim of Allen, Stephens & Co., it might have brought a proper proceeding of interpleader, in a proper court, before this suit was brought. It made no effort to obtain relief from the state court in the suit brought by Allen, Stephens & Co. It is shown, by the order filed September 18th, 1873, to have opposed the granting of an injunction against itself by this court, from paying over the moneys to any one. but the plaintiff, and to have opposed the appointment of a receiver of those moneys. It asserts, in its answer, the invalidity of the plaintiff's claim, as against that of Allen, Stephens & Co., to such moneys. Under these circumstances, it ought to pay costs to the plaintiff.

The Broadway Bank claims, that, if it is not awarded costs against the plaintiff, it should have costs against Allen, Stephens & Co. The court cannot award the costs of the Broadway Bank against Allen, Stephens & Co., as that would be, in effect, a decree between co-defendants. 2 Daniell, Ch. Prac. (4th Am. Ed.) 1406, 1407. If the Broadway Bank had put itself in a position to be relieved from paying costs to the plaintiff, then, as Allen, Stephens & Co. have, by their conduct, occasioned this suit, the court might deem it proper to order the plaintiff to pay costs to the Broadway Bank, and then allow him to receive such costs again from Allen, Stephens & Co. Id. But, the considerations before adverted to, on the question of costs, as between the plaintiff and the Broadway Bank, indicate that the costs of the Broadway Bank ought not to be paid by Allen, Stephens & Co.

Allen, Stephens & Co. claim that they should have costs from the plaintiff, on the ground that the plaintiff in his bill asks no relief against them except an injunction and a receiver pendente lite. This is a mistake. The bill asks for a perpetual injunction against Allen, Stephens & Co., both as originally filed, and as amended, from further proceeding on their attachment and from obtaining any judgment or order in their suit. This court is inhibited from granting such relief. Act March 2, 1793 (1 Stat. 334, § 5, now § 720, Rev. St.) But, the bill sets out the illegality of the claim of Allen, Stephens & Co., and the wrong and injury to the plaintiff by what Allen, Stephens & Co. had done, and prays for a decree determining the conflicting claims to the moneys, and for an adjudication that the plaintiff is entitled to said moneys to the use of his office, and for such other or further relief as may be proper, and for costs against all the defendants. Clearly, Allen, Stephens & Co. ought not to have costs from the plaintiff, but ought to pay costs to him.

The sheriff was a proper party to the suit, as a claimant to the money. He ought not to have costs against the successful plaintiff. Nor ought he ultimately to pay the costs of the plaintiff, yet the plaintiff ought to have the costs of making the sheriff a party. But, as the sheriff was merely a ministerial officer, and as the wrongful conduct of Allen, Stephens & Co. made it necessary to bring in the sheriff as a party, the proper cause is for the plaintiff to recover against Allen, Stephens & Co. his costs of making the sheriff a party, and also the costs of the sheriff's defence, the latter costs to be paid over to the sheriff by the plaintiff, when collected. Such is the practice laid down by Daniell, as above cited.

A decree will be entered establishing the plaintiff's rights, as set forth in the bill, as against the claim of Allen, Stephens & Co. and their suit and attachment and judgment, to the $1,445.45, with interest from May 22d, 1873, the time when process on the original bill was served on the Broadway Bank. The correspondence between that bank and the comptroller, and that bank and the receiver, relieves it from interest prior to the bringing of this suit. The decree will provide that the Broadway Bank is liable to the plaintiff for such sum and such interest; that, towards paying it, Allen, Stephens & Co. are liable to the plaintiff for $876.94, with interest from September 20th, 1873; that execution issue against Allen, Stephens & Co. for that amount, and against the Broadway Bank for the residue; and that execution against the Broadway Bank for any amount except such residue be stayed until such execution against Allen, Stephens & Co. is returned unsatisfied, or until it otherwise appears that the plaintiff is unable to collect from Allen, Stephens & Co. the amount for which they are so decreed to be liable. In regard to costs, the decree will provide as above directed. The parties will be heard on the question as to a provision for a dividend on the claim of Allen, Stephens & Co.